Kenneth C. Spafford (#021336)
8001 Bennington Drive
Knoxville, TN 37909
Ph: (602) 410-2422
Fax: (865) 674-5360
kspafford@spaffordlaw.com

Attorney for Plaintiff

## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ugly Pools USA, Inc., a Delaware corporation, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | **Trademark Infringement** |
| Kevin Brogan, an individual; We Can Fix It Remodeling LLC, an Arizona limited liability company f/k/a We Fix Ugly Houses of Arizona LLC; Designs 4 You, LLC, an Arizona limited liability company f/k/a We Fix Ugly Houses LLC; We Fix Ugly Houses LLC, an Arizona limited liability company; and We Fix Ugly Houses of Arizona LLC, an Arizona limited liability company, | |
| Defendants. | |

Plaintiff Ugly Pools USA, Inc. ("Plaintiff" or "Ugly Pools") alleges:

**Parties**

1.      Plaintiff Ugly Pools USA, Inc. is a Delaware corporation with its principal place of business in Maricopa County, Arizona.  Ugly Pools Arizona, Inc. d/b/a We Fix Ugly Pools is a trademark licensee of Ugly Pools USA, Inc.

2.      Defendant We Can Fix It Remodeling, LLC f/k/a We Fix Ugly Houses of Arizona LLC is an Arizona limited liability company with its principal place of business in Maricopa County, Arizona.

3.      Defendant Designs 4 You, LLC f/k/a We Fix Ugly Houses LLC is an Arizona limited liability company with its principal place of business in Maricopa County, Arizona.

4.      Defendant We Fix Ugly Houses LLC is an Arizona limited liability company with its principal place of business in Maricopa County, Arizona.

5.      Defendant We Fix Ugly Houses of Arizona LLC is an Arizona limited liability company with its principal place of business in Maricopa County, Arizona.

6.      Upon information and belief, Defendant Kevin Brogan is a resident of Maricopa County, Arizona.

**Jurisdiction and Venue**

7.      Jurisdiction is proper in this District because Defendants are residents of the District of Arizona. Defendants have purposefully directed their services and business activities to the District of Arizona, committed acts of trademark infringement within this District, and have cause events to occur in this District that are the subject of this litigation.

8.     This Court has subject matter jurisdiction in this case under 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a) and (b).

9.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**Background: The Lawsuit and Settlement Agreement**

10.     On September 12, 2018, Plaintiff filed a federal trademark infringement lawsuit (the "First Lawsuit") in this District against Defendant We Can Fix It Remodeling LLC, known at the time as We Fix Ugly Houses of Arizona LLC; Designs 4 You, LLC, known at the time as We Fix Ugly Houses LLC; and Kevin Brogan, who was and is the sole member of each of these LLCs (collectively, the "First Lawsuit Defendants").  The First Lawsuit was titled *Ugly Pools USA, Inc. v. We Fix Ugly Houses, LLC, et al.*, No. CV-18-02853-PHX-SRB.

11.     The First Lawsuit alleged, *inter alia*, that the First Lawsuit Defendants infringed on Plaintiff's registered trademark WE FIX UGLY POOLS® by intentionally using a confusingly similar trademark, logo, and trade name WE FIX UGLY HOUSES in the Phoenix market.  A copy of Plaintiff's registered trademark for WE FIX UGLY POOLS® is attached hereto as **Exhibit A.**

12.     Multiple customers, vendors, and prospective customers had approached Plaintiff and the First Lawsuit Defendants and inquired if Plaintiff and the First Lawsuit Defendants were related companies.

13.     After the First Lawsuit was filed and one day before the First Lawsuit Defendants' Answer was due, each of the First Lawsuit Defendants executed a settlement

agreement (the "Settlement Agreement") with Plaintiff.  Each of the First Lawsuit Defendants also executed a separate assignment (the "Assignment"), assigning to Plaintiff any and all rights in the trademark WE FIX UGLY HOUSES.   The Settlement Agreement and Assignment are attached hereto as **Exhibit B.**

14.    After the Settlement Agreement and Assignment were executed, Plaintiff voluntarily dismissed the First Lawsuit without prejudice, before the First Lawsuit Defendants were required to file an Answer.  The Settlement Agreement does not release the First Lawsuit Defendants from any claims or liability.

### Breach of the Settlement Agreement

15.    The Settlement Agreement requires that the First Lawsuit Defendants cease all use of the mark WE FIX UGLY HOUSES within 30 days of execution of the Settlement Agreement.

16.    The First Lawsuit Defendants continue to use the mark WE FIX UGLY HOUSES.

17.    The Settlement Agreement requires that Defendants transfer the domain www.wefixuglyhousesaz.com to Plaintiff within 30 days of execution of the Settlement Agreement.

18.    The First Lawsuit Defendants have refused to transfer the domain www.wefixuglyhousesaz.com to Plaintiff and continue to use this website to redirect to their new website, www.wecanfixitremodeling.com.

19.     The Assignment includes a clause whereby the First Lawsuit Defendants covenant to execute all documents, papers, forms and authorizations and take all other actions that may be necessary for securing, completing, or vesting in Plaintiff full right, title, and interest in the mark WE FIX UGLY HOUSES.

20.     The Assignment includes a clause whereby the First Lawsuit Defendants warrant and covenant to not use the mark WE FIX UGLY HOUSES or any similar name in connection with the First Lawsuit Defendants' businesses.

21.     The First Lawsuit Defendants are continuing to use the name WE FIX UGLY HOUSES in connection with their Google Business directory.  **See Exhibit C.**

22.     The First Lawsuit Defendants are continuing to use the name WE FIX UGLY HOUSES and its associated logo on their physical storefront sign.  **See Exhibit C.**

23.     The First Lawsuit Defendants are continuing to use the name WE FIX UGLY HOUSES and its associated logo in connection with their Facebook page.  **See Exhibit C.**

24.     After the First Lawsuit was dismissed, Defendant Kevin Brogan changed the name of We Fix Ugly Houses of Arizona LLC to We Can Fix It Remodeling LLC; and changed the name of We Fix Ugly Houses LLC to Designs 4 You, LLC.  However, in December 2018, Defendant Kevin Brogan created two new Arizona limited liability companies that have the same name as the original lawsuit LLC Defendants, i.e., We Fix Ugly Houses LLC and We Fix Ugly Houses of Arizona LLC (the "New Defendants").

## Liquidated Damages

25.     The damages caused by the First Lawsuit Defendants' breaches of the settlement agreement are primarily trademark damages and the accompanying harm to Plaintiff's reputation and goodwill.   Plaintiff is already aware of customers of the First Lawsuit Defendants that have blamed Plaintiff for Defendants' poor workmanship.

26.     The exact dollar value of Plaintiff's trademark and goodwill damages were, and are, difficult to calculate in advance and at the time of breach.

27.     The Settlement Agreement states that the any new breach by the First Lawsuit Defendants of the trademark and domain transfer terms of the Settlement Agreement shall subject them to liability of $50,000 in liquidated damages.

28.     The First Lawsuit Defendants collectively earn approximately $700,000 per month in gross income.

29.     Plaintiff's Arizona subsidiary and trademark licensee Ugly Pools of Arizona, Inc., d/b/a We Fix Ugly Pools, earns millions of dollars per year in gross income.

## Incidental Damages

30.     More than 30 days after the Settlement Agreement and Assignment were executed, Plaintiff's counsel viewed the First Lawsuit Defendants' new website, www.wecanfixitremodeling.com, to confirm that the First Lawsuit Defendants had ceased all use of WE FIX UGLY HOUSES.   In fact, the First Lawsuit Defendants' website was still using WE FIX UGLY HOUSES in multiple locations on their website.

31.     More than 30 days after the Settlement Agreement and Assignment were executed, Plaintiff's counsel went online to the Arizona Corporation Commission to confirm that the First Lawsuit Defendants had changed the names of their companies We Fix Ugly Houses LLC and We Fix Ugly Houses of Arizona LLC.  Defendants had not yet changed the name of either company.

32.     More than 30 days after the Settlement Agreement and Assignment were executed, Plaintiff's counsel visited the First Lawsuit Defendants' old website, www.wefixuglyhousesaz.com, to confirm that the website was in the possession of Plaintiff. Instead, the website redirected to the First Lawsuit Defendants' new website, www.wecanfixitremodeling.com.

33.     Plaintiff's counsel sent an email to Defendants, notifying Defendants of their breaches of the Settlement Agreement and reminding Defendants of their obligation to cease all use of WE FIX UGLY HOUSES.  In response, Defendants eventually removed references to WE FIX UGLY HOUSES from their new website and changed their company names.  As of the time of the filing of the present suit, however, Defendants have refused to transfer ownership of www.wefixuglyhousesaz.com to Plaintiff.  The First Lawsuit Defendants are also continuing to use WE FIX UGLY HOUSES as their trade name in the Google Business Directory.  The First Lawsuit Defendants are also continuing to use the WE FIX UGLY HOUSES name and confusingly similar logo on their Facebook page.

34.     Defendant Kevin Brogan also created new entities with the same names as the old infringing entities, i.e., Defendant We Fix Ugly Houses LLC and We Fix Ugly Houses of Arizona LLC.

35.     Absent the follow-up from Plaintiff's counsel, there is no evidence Defendants were ever planning to cease any of the above uses of WE FIX UGLY HOUSES.

36.     As a result of the First Lawsuit Defendants' breaches, Plaintiff incurred reasonable expenses following up and reminding Plaintiff to cease use of WE FIX UGLY HOUSES.

37.     As a result of the First Lawsuit Defendants' breaches, Plaintiff is incurring expenses in filing this suit to stop Defendants' infringing activities.

**Consequential Damages**

38.     The First Lawsuit Defendants' continued use of WE FIX UGLY HOUSES in violation of the Settlement Agreement and Assignment caused, and is continuing to cause, damage to Plaintiff's reputation and goodwill.

**Specific Performance**

39.     The First Lawsuit Defendants' refusal to transfer the domain www.wefixuglyhousesaz.com to Plaintiff is a breach of the Settlement Agreement and Assignment.

40.     The domain www.wefixuglyhousesaz.com is a unique domain name.

41.   The First Lawsuit Defendants' continued use of the domain www.wefixuglyhousesaz.com is causing irreparable harm to Plaintiff's reputation and goodwill, for which there is no adequate remedy at law.

### Injunctive Relief

42.   The Settlement Agreement entitles Plaintiff to injunctive relief in the event that the First Lawsuit Defendants breach the Settlement Agreement.

43.   The First Lawsuit Defendants' continued use of WE FIX UGLY HOUSES and the associated logo is causing irreparable harm to Plaintiff's reputation and goodwill, for which there is no adequate remedy at law.

### Attorney's Fees

44.   The Settlement Agreement is an Arizona contract, and states that in the event Plaintiff or the First Lawsuit Defendants bring suit to enforce the Settlement Agreement, the prevailing party shall be entitled to an award of its attorneys' fees.

### Plaintiff's Trademark Rights

45.   Plaintiff is the owner of the federal registered trademark WE FIX UGLY POOLS (the "Registered Mark") for "Renovation and repair services in the field of swimming pools, spas, and tubs," Reg. No. 3,302,159 (the "Registered Ugly Pools Services"). The Registered Mark was registered in 2007. *See* **Exhibit B.**

46.   Plaintiff is the owner of the common law trademark WE FIX UGLY POOLS (the "Common Law Mark") for, *inter alia*, constructing, renovating, and repairing swimming

pools, spas, tubs, patio covers, fountains, waterfalls, outdoor kitchens, living spaces, and other outdoor structures (the "Ugly Pools Services").

47.    By virtue of the Assignment, Plaintiff is the owner of the common law mark WE FIX UGLY HOUSES for all services that Defendants are engaged in.

48.    Ugly Pools Arizona Inc. ("We Fix Ugly Pools") is an Arizona corporation doing business as We Fix Ugly Pools.  Plaintiff is the sole Director of We Fix Ugly Pools.

49.    We Fix Ugly Pools is a nonexclusive licensee of Plaintiff, whereby all of We Fix Ugly Pool's use of the Common Law Mark and Registered Mark WE FIX UGLY POOLS inures to the benefit of Plaintiff.

50.    We Fix Ugly Pools uses the WE FIX UGLY POOLS trademark in commerce in connection with all of the Ugly Pools Services.

51.    Plaintiff maintains quality control over We Fix Ugly Pools with respect to the Ugly Pools Services.

52.    Plaintiff also uses the WE FIX UGLY POOLS Registered Mark and Common Law Mark in Texas in connection with the Ugly Pools Services.

**Defendants and the WE FIX UGLY HOUSES Trademark**

53.    From late 2017 to approximately November 15, 2018, the First Lawsuit Defendants collectively did business as We Fix Ugly Houses ("We Fix Ugly Houses").

54.    Since November 15, 2018, all Defendants have continued to use WE FIX UGLY HOUSES as a trademark in association with Defendants' goods and services.

10

55.     At all times relevant hereto, Defendant Kevin Brogan was and is the sole Member of the First Lawsuit Defendants in the lawsuit.  Defendant Kevin Brogan is also the sole member of the recently-formed We Fix Ugly Houses of Arizona, LLC.  Defendant Kevin Brogan was also the organizer of recently formed We Fix Ugly Houses LLC and was its initial sole member, and is currently its statutory agent.

56.     Defendants used, and continue to use, the common law trademark WE FIX UGLY HOUSES in commerce in connection with constructing, renovating, and repairing bathrooms, patio enclosures, patio covers, kitchens, windows, and doors (the "Ugly Houses Services").

### The Maricopa County Home Show

57.     Plaintiff first became aware of Defendants during a Maricopa County Home Show, which was held from July 13-15, 2018 (the "Home Show"). We Fix Ugly Pools and We Fix Ugly Houses were both exhibitors at the Home Show.

58.     At the Home Show, We Fix Ugly Pools was approached by Home Show attendees, who asked if We Fix Ugly Houses and We Fix Ugly Pools were affiliated.

59.     At the Home Show, We Fix Ugly Pools' own vendors asked We Fix Ugly Pools if We Fix Ugly Houses and We Fix Ugly Pools were affiliated.

60.     At the Home Show, employees of We Fix Ugly Houses were also questioned by Home Show attendees as to whether We Fix Ugly Houses and We Fix Ugly Pools were affiliated.

**Likelihood of Confusion**

61.    Plaintiff and Plaintiff's predecessors-in-interest have used the WE FIX UGLY POOLS trademark in commerce since 2003.

62.    The distinctiveness of Plaintiff's Registered Mark is incontestable.

63.    Plaintiff and Plaintiffs' licensee We Fix Ugly Pools spend hundreds of thousands of dollars each year advertising and promoting the WE FIX UGLY POOLS trademark in connection with the Ugly Pools Services.

64.    Plaintiff's predecessors-in-interest in the WE FIX UGLY POOLS trademark hold the world record for the fastest pool build, and built the pool at the Arizona Diamondbacks Stadium.  Brian Morris, the sole owner of Plaintiff and We Fix Ugly Pools, is known as the Ugly Pool Guy, the mascot for We Fix Ugly Pools.  The Ugly Pool Guy has represented Plaintiff and We Fix Ugly Pools in newspapers including the New York Times, appeared in articles in industry magazines, written advice columns, and instructed at how-to shows and in do-it-yourself literature.

65.    We Fix Ugly Pools' market area includes Phoenix, Arizona.

66.    Defendants' market area includes Phoenix, Arizona.

67.    We Fix Ugly Pools' services include construction of patio covers.

68.    Defendants' services include construction of patio covers.

69.    Members of the public asked We Fix Ugly Pools if We Fix Ugly Pools and Defendants were affiliated.

70.     We Fix Ugly Pools' own vendors asked We Fix Ugly Pools if We Fix Ugly Pools and Defendants were affiliated.

71.     Members of the public asked Defendants if We Fix Ugly Pools and Defendants are affiliated.

72.     We Fix Ugly Pools advertises the Ugly Pools Services online.

73.     Defendants advertise the Ugly Houses Services online.

74.     We Fix Ugly Pools is a regular exhibitor at the Maricopa County Home Show.

75.     Defendants were exhibitors at the Maricopa County Home Show.

76.     We Fix Ugly Pools advertises via brochures.

77.     Defendants advertise via brochures.

78.     Most customers of We Fix Ugly Pools are homeowners who have no more knowledge or experience than the general public about the pool and home renovation industries.

79.     Most customers of Defendants are homeowners who have no more knowledge or experience than the general public about the pool and home renovation industries.

80.     We Fix Ugly Houses used the following logo (the "WE FIX UGLY HOUSES Logo") on the front page of its website www.wefixuglyhousesaz.com and on Facebook, respectively:

13

 

81.     Defendants are still using the WE FIX UGLY HOUSES logo on Facebook.

82.     Defendants intentionally minimize the HOUSES portion of the WE FIX UGLY HOUSES Logo in order to create the impression that We Fix Ugly Pools and We Fix Ugly Houses are affiliated as "We Fix Ugly" companies.

83.     We Fix Ugly Pools uses the following cartoon man logo (the "UGLY POOL GUY Logo") on the front page of its website www.wefixuglypools.com and in various advertisements:



84.     We Fix Ugly Houses used a mascot drawn with a style similar to the UGLY POOL GUY Logo in order to create the impression and that Defendants and We Fix Ugly Pools are affiliated.

14

85.    We Fix Ugly Pools uses the following logo (the "WE FIX UGLY POOLS Logo") on the front page of its website www.wefixuglypools.com and in various advertisements:



86.    We Fix Ugly Houses used the color yellow for its WE FIX UGLY HOUSES Logo and background intentionally in order to create the impression that Defendants and We Fix Ugly Pools are affiliated.

87.    In addition to its Arizona contractor license for commercial and residential swimming pools, We Fix Ugly Pools has a dual Arizona general contractor license for General Small Commercial and General Residential work.  The Ugly Pools Services already include non-pool construction, such as building patio covers, gazebos, caves, outdoor kitchens, and fire pits.  We Fix Ugly Pools intends to expand the Ugly Pools Services to include additional Ugly Houses Services such as home repair and renovation.

88.    Shortly after the Home Show in July 2018, We Fix Ugly Pools visited a customer for pool service.  The customer informed We Fix Ugly Pools that the customer was planning to use another pool company because the customer had a bad experience with Defendants, and the customer believed We Fix Ugly Pools and Defendants were affiliated.

89.    At the time Defendants began using the WE FIX UGLY HOUSES trademark, Defendants were aware of We Fix Ugly Pools.

90.    Defendant Kevin Brogan maintains sole control and direction over the other named Defendants.   Upon information and belief, Defendant Kevin Brogan personally committed, directed, or approved in advance every action herein taken by the other named Defendants, and is personally liable for all acts alleged herein against the other named the other named Defendants, who previously collectively operated under the name We Fix Ugly Houses.

### FIRST CLAIM FOR RELIEF
**(Federal Trademark Infringement)**

91.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

92.    WE FIX UGLY POOLS is a distinctive trademark used in interstate commerce to identify the Ugly Pools Services.

93.    Plaintiff is the owner of the federal trademark registration for WE FIX UGLY POOLS.

94.    The federal trademark registration for WE FIX UGLY POOLS is current, valid, and subsisting.

95.    Defendants' previous and current use of a confusingly similar imitation of Plaintiff's WE FIX UGLY POOLS Registered Mark is likely to cause confusion, deception and mistake by creating the false and misleading impression that Defendants' services are performed by Plaintiff, or are associated or connected with Plaintiff, or have the sponsorship, endorsement, or approval of Plaintiff.

96.     Defendants' use of the WE FIX UGLY HOUSES trademark is confusingly similar to Plaintiff's federally registered WE FIX UGLY POOLS trademark in violation of 15 U.S.C. § 1114.  Defendants' actions are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by Plaintiff's WE FIX UGLY POOLS Registered Mark, for which Plaintiff has no adequate remedy at law.

97.     Defendants' actions demonstrated and continue to demonstrate Defendants' intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's WE FIG UGLY POOLS Registered Mark to Plaintiff's great and irreparable harm.

98.     Defendants caused and are likely to continue causing substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Plaintiff's profits, actual damages, enhanced profits and damages, costs, and reasonable attorney's fees under 15 U.S.C.  §§ 1114, 1116, and 1117.

## SECOND CLAIM FOR RELIEF
### (Federal Unfair Competition and False Designation of Origin)

99.     Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

100.    Defendants' offer to sell and sale of services bearing the WE FIX UGLY HOUSES trademark, which is confusingly similar to the WE FIX UGLY POOLS trademark, and identical to Plaintiff's common law WE FIX UGLY HOUSES trademark, is likely to cause confusion, mistake or deceive as to the affiliation of Defendants' services with Plaintiff's WE FIX UGLY POOLS and WE FIX UGLY HOUSES Common Law Marks.

101.   Defendants have made false representations, false descriptions, and false designations of, on, or in connection with Defendants' services in violation of 15 U.S.C. § 1125(a).  Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and additionally, injury to Plaintiff's goodwill and reputation as symbolized by Plaintiff's WE FIX UGLY POOLS and WE FIX UGLY HOUSES Common Law Marks, for which Plaintiff has no adequate remedy at law.

102.   Defendants' actions demonstrate an intentional, willful, and malicious intent to trade and profit on the goodwill associated with Plaintiff's WE FIX UGLY POOLS and WE FIX UGLY HOUSES Common Law Marks to the great and irreparable injury of Plaintiff.

103.   Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiff.  Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney's fees under 15 U.S.C.  §§ 1125(a), 1116, and 1117.

## THIRD CLAIM FOR RELIEF
### (Common Law Unfair Competition)

104.   Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

105.   Defendants have been unjustly enriched.  Defendants have damaged Plaintiff's business, reputation, and goodwill.

106.   Some of Plaintiff's and Defendants' services are in direct competition, including but not limited to the services of building outdoor coverings.

107.    Defendants' acts complained of herein were and are intentional, wanton, willful, and committed in bad faith and with the intent to confuse and deceive the public and damage Plaintiff.

108.    Defendants' acts complained of herein have caused Plaintiff irreparable harm for which there is no adequate remedy at law.

109.    Defendants are liable to Plaintiff for unfair competition violations under Arizona common law.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract)

110.    The Settlement Agreement and Assignment are contracts that impose contractual obligations upon the First Lawsuit Defendants Kevin Brogan, We Can Fix It Remodeling LLC f/k/a We Fix Ugly Houses of Arizona LLC, and Designs 4 You, LLC, an Arizona limited liability company f/k/a We Fix Ugly Houses LLC.

111.    The First Lawsuit Defendants breached, and continue to breach, the Settlement Agreement and Assignment.

112.    The First Lawsuit Defendants' breaches of the Settlement Agreement and Assignment resulted in damage to Plaintiff.

113.    Some of the First Lawsuit Defendants' breaches of the Settlement Agreement and Assignment have caused, and continue to cause, Plaintiff irreparable harm for which there is no adequate remedy at law.

**WHEREFORE,** Plaintiff requests judgment against Defendants as follows:

A.      Preliminarily and permanently enjoining and restraining Defendants, their agents, servants, employees, successors, affiliated companies, and assigns and all others in concert with them from:

(1) selling or offering for sale any products or services bearing the WE FIX UGLY POOLS trademark or any variations or combinations of "WE FIX UGLY" as a trademark or service mark for any goods or services;

(2) using the WE FIX UGLY POOLS or WE FIX UGLY HOUSES names or any other similar mark, word or name, as a trademark, service mark, trade name or corporate name in any manner likely to cause confusion, mistake or deception with Plaintiff, the Ugly Pool Services, or any other goods or services offered by Plaintiff;

B.       Awarding to Plaintiff Defendants' profits and compensatory damages suffered by Plaintiff, in an amount to be proven at trial, as a result of Defendants' acts complained of herein, all trebled pursuant to 15 U.S.C. § 1117(b);

C.      To the extent Plaintiff does not receive an adequate remedy under Paragraphs A and B, awarding Plaintiff equitable damages equal to the full amount by which Defendants have been unjustly enriched as a result of their unlawful activities;

D.      Awarding to Plaintiff liquidated damages, consequential damages, incidental damages, and attorneys' fees pursuant to the Settlement Agreement, the Assignment, and A.R.S. § 12-341.01;

E.      Ordering specific performance transferring the domain www.wefixuglyhousesaz.com from Defendants to Plaintiff;

F.      Awarding Plaintiff's costs, disbursements, and attorney's fees incurred in bringing this action;

G.      Awarding Plaintiff punitive damages as provided by law; and

H.      Awarding such other and further relief as the Court deems just and proper.

DATED this 25th day of February, 2019.

By:
      s/ Kenneth C. Spafford

_____

Kenneth C. Spafford
8001 Bennington Dr.
Knoxville, TN 37909
Attorney for Plaintiff